IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE APPLICATION OF THE )<br>PLURINATIONAL STATE OF BOLIVIA )<br>FOR AN ORDER DIRECTING DISCOVERY )<br>FROM GONZALO SANCHEZ DE LOZADA )<br>Y SANCHEZ DE BUSTAMANTE )<br>PURUSANT TO 28 U.S.C. § 1782 )<br>_____ ) | Civil Action No. 1:17-mc-30 (AJT/MSN) |

### ORDER

On December 6, 2017, the Plurinational State of Bolivia ("Bolivia") filed a Petition for Discovery in Aid of a Foreign Proceeding pursuant to 28 U.S.C. § 1782 [Doc. No. 1] ("the Peition"). In the Petition, Bolivia is seeking discovery for use in an international investor-state arbitration filed by Glencore Finance (Bermuda) Limited ("Glencore") styled *Glencore Finance (Bermuda) Limited v. Plurinational State of Bolivia,* PCA case No. 2016-39 (the "*Glencore* Arbitration").[1] Specifically, Bolivia is seeking documents and testimony from Gonzalo Sanchez de Lozada y Sanchez de Bustamante ("Sanchez de Lozada"), the former President of Bolivia, regarding his role in the privatization and re-nationalization of the assets at issue in the *Glencore* Arbitration. On January 5, 2018, Julio Miguel Orlandini-Agredia and Compania Minera Orlandini (collectively the "Movants") filed a Motion for Leave to Intervene in Petition for Discovery in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 [Doc. No. 11] (the "Motion"). Movants seek to intervene in this proceeding in order to have access to the documents produced and to participate in the depositions to be taken on the grounds that Bolivia may use the information obtained in this proceeding in defending against their claims that have

---

[1] The *Glencore* Arbitration was filed on July 19, 2016 pursuant to The Agreement between the Government of the United Kingdom of Great Britain and Northern Ireland and the Government of Bolivia for the Promotion and Protection of Investments (the "Bolivia-UK BIT") and The Arbitration Rules of the United Nations Commission on International Trade Laws (the "UNCITRAL Arbitration Rules"). It is seated in Paris, France and is being administered by the Oermanent Court of Arbitration in The Hague.

1

now been brought against Bolivia in a separate investor-state arbitration (the "*CMO Arbitration*"). On February 9, 2018, the Court held a hearing on the Motion, after which it took the Motion under advisement. For the reasons set forth herein, the Motion is DENIED.

## BACKGROUND[2]

The Corporacion Minera de Bolivia, ("COMIBOL") is Bolivia's state owned mining company that owned various mining concessions in Bolivia. Compania Minera del Sur S.A. ("COMSUR") was formed in 1962 by Sanchez de Lozada, who served as its president until 1982 and its majority owner until COMSUR was sold to Glencore (or one of its subsidiaries) in late 2004 or early 2005. Sanchez de Lozada also served as President of Bolivia from August, 1993 to August, 1997, and again from August, 2002 to October, 2003. From 1993 to 2005, COMIBOL and COMSUR participated in public-private joint venture, whereby COMSUR operated COMIBOL's concessions as COMIBOL's partner.

Movant Compania Minera Orlandini ("CMO") is a Bolivian mining company formed in 1964 and owned by movant Julio Miguel Orlandini-Agredia ("Orlandini"), a United States citizen residing in the United States. CMO had obtained over 40 mining concessions in Bolivia. In 1997, COMIBOL received a mining concession that CMO claims overlaid one of CMO's pre-exiting concessions. After COMIBOL and COMSUR unsuccessfully attempted in 1999 to obtain from CMO an easement through that CMO concession, CMO claims that COMIBOL and COMSUR illegally trespassed on and extracted minerals from its concession.

In late 2004 or early 2005, Glencore acquired COMSUR and became the operator of the COMIBOL mining concession that CMO claimed infringed upon their concession. Glencore also

---

[2] This factual recitation is a brief summary of the information provided to the Court through the parties' filings, solely for the purposes of the Motion, and does not otherwise constitute findings of fact.

2

acquired through its purchase of COMSUR a company known as Colquiri, S.A. ("Colquiri").[3] Colquiri owned (1) a tin smelter; (2) an antimony smelter; and (3) a 30 year lease of the "Colquiri Mine," with the attendant rights to explore, extract and market minerals from the mine, which included tin and zinc (collectively "the Colquiri Assets").[4] From 2007 to 2012, Bolivia re-nationalized the Colquiri Assets.

In the *Glencore* Arbitration, Glencore claims that Bolivia breached its obligations under the Bolivia-UK bi-lateral investment treaty ("the Bolivia-UK BIT") when it re-nationalized the Colquiri Assets. In this action, Bolivia seeks discovery from Sanchez de Lozada concerning the privatization and sales of the Colquiri Assets, which Bolivia contends is relevant to the jurisdiction of the arbitral tribunal in the Glencore Arbitration, the merits of the Glencore's claims against Bolivia and the damages sought in the Glencore Arbitration.

In the *CMO* Arbitration, Movants claim that Bolivia violated its obligations under the Bolivia-US bi-lateral investment treaty (the "Bolivia-US BIT").[5] They seek to intervene to have access to the documents likely to be requested by Bolivia and produced by Sanchez de Lozada in this action, which are "directly relevant to their arbitration because they likely contain information on COMSUR's incursion into CMO's concessions and the amount of minerals that COMSUR and COMIBOL extracted from CMO's concessions" and "information that Sanchez de Lozada disclosed to Glencore during the sale of COMSUR, showing wrongful acts against

---

[3] Glencore initially obtained a 51% ownership interest in Colguiri through its purchase of COMSUR and subsequently acquired the rest of the shares of Colquiri from the other shareholders.

[4] Colquiri acquired the 30 year lease in 2000 and the antimony smelter in 2001 as part of Bolivia's privatization campaign. The tin smelter was acquired by Vintos SA in 2000, also as part of the privatization campaign, and Vintos SA subsequently sold the tin smelter to Colquiri in 2002. Sanchex de Lozada participated in the privatization process for the antimony smelter and the Colquiri Mine and acquired Vintos SA, which participated in the privatization of the tin smelter. Bolivia re-nationalized the tin smelter in 2007, the antimony smelter in 2010, and the Colquiri Mine in 2012.

[5] As characterized by Movants, their claims involve "the illegal extraction of minerals and expropriation of CMO's mining concessions and transfer of those concessions to Glencore International AG (together with its subsidiaries, 'Glencore')—the successor of Sanchez de Lozada former company COMSUR." Decl. of Dawn Y. Yamane Hewett [Doc. No. 12-1] ("Hewett Decl.") 5.

CMO." Hewett Decl. 5. Movants also seek intervention in order to participate in any deposition of Sanchez de Lozada.

## ANALYSIS

Movants claim they have "a direct interest in Bolivia's requested discovery, and that that interest may be impaired if Movants are not allowed to intervene participate." *Id.* at 6. They also contend that "Movants' claims in the Movants' Arbitration are related and share a common question of fact with Bolivia's requested discovery and the *Glencore* Arbitration." *Id.* Their overall concern is that "Bolivia will be able to use the discovery requested in these proceedings not only against Glencore, but also against Movants in Movants' Arbitration." *Id.* Movants seek intervention under either Fed. Rule Civ. P. 24(a), mandating intervention as of right, or 24(b), allowing permissive intervention.[6] Under Federal Rule of Civil Procedure 24(a), the Court must allow intervention as of right under the following circumstances:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Movants do not assert that they have an unconditional right to intervene by statute, and therefore must show that they "claim[] an interest relating to the property or transaction that is the subject of [this] action[,]" that neither Glencore nor Bolivia can adequately represent their interests, and that they are "so situated that disposing of the action [this § 1782 Petition] may as a practical

---

[6] Bolivia challenges Movants' standing to seek intervention. As a general matter, "one against whom information obtained under section 1782 may be used[] has standing," to intervene. *In re Letter of Request from Crown Prosecution Serv. of U.K.*, (*In re CPS*) 870 F.2d, 686, 689 (D.C. Cir. 1989). Based on Movants' allegations, the Court concludes that Movants have Article III standing to seek intervention, although as discussed below, they have not demonstrated a sufficient protectable interest, claim or defense to warrant intervention under either Rule 24(a) or (b).

matter impair or impede [their] ability to protect [their] interests." Alternatively, under Rule 24(a)(2), Movants must show that they "[have] a claim or defense that shares with the main action a common question of law or fact."

This § 1782 action was filed to obtain discovery in aid of the *Glencore* Arbitration. The "property or transaction that is the subject matter" of this action is therefore the transactions at issue in the *Glencore* arbitration—the re-nationalization of the Colquiri Assets that occurred from 2007 to 2012. None of those assets are the subject of the *CMO* Arbitration, which involves mining concessions that are not part of the Coquiri Assets. Likewise, Movants do not claim any legally protectable interest in any of the Colquiri Assets. They are not parties to the *Glencore* Arbitration and do not face the prospect of becoming parties to that arbitration. For these reasons, the claims to be adjudicated in the *Glencore* Arbitration are different than the claims to be adjudicated in the *CMO* Arbitration and the adjudications in the *Glencore* arbitration will not adjudicate any aspect of CMO's claims against Bolivia in their arbitration. Rather, Movants' only basis for intervening in this action is an "interest in discovery" to be obtained in this action, not because discovery is being sought from Movants, or Movants have some ownership or other protectable interest in the documents to be produced, or some privilege to protect with respect to anticipated testimony, but solely because aspects of that anticipated discovery may relate in some fashion to their claims against Bolivia and that, somehow, not having access to the discovery in this case will prejudice its ability to pursue their claims in the *CMO* Arbitration. They do not explain how that would happen except in the most conclusory, speculative fashion, particularly since they cannot adequately explain why they cannot obtain in their own, pending § 1782 proceeding any evidence relevant to their claims that Bolivia might obtain in this action. Moreover, Movants' discovery needs with respect to the *CMO* Arbitration are different than

Bolivia's and Glencore's with respect to *Glencore* Arbitration, and as a practical matter, Movants' intervention would add complexity without sufficiently off-setting benefits, including the prospect of creating collateral issues needlessly for this and other on-going § 1782 proceedings.

Movants rely on cases where courts have allowed non-parties to intervene in § 1782 proceedings where the intervener is likely to be a future defendant in a foreign proceeding similar to the one for which a § 1782 petition was filed. For example, in *In re CPS*, the Crown Prosecution Service of the United Kingdom brought a § 1782 action seeking discovery in aid of an ongoing criminal investigation against a particular target, and the court allowed intervention by another target who faced likely prosecution for the same actions and under the same law. *See also In re Request for International Judicial Assistance (Letter Rogatory) From the Federative Republic of Brazil*, 687 F. Supp. 880 (S.D.N.Y. 1988). Here, Movants are not "targets" or potential parties in the *Glencore* Arbitration. Rather, they are the claimants in an unrelated arbitration that arises out of a separate BIT and involves the alleged expropriation of different assets. The mere fact that both arbitrations share to some extent a common historical background, or the involvement in some fashion of Sanchez de Lozada or Glencore, does not, by itself, give Movants a "significantly protectable interest" in Bolivia's discovery in this action.[7] *See Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (holding that intervention as of right requires a "significantly protectable intrest" where "Intervenors stand to gain or lose by the direct

---

[7] Movants do not claim that they are in a position to intervene in the *Glencore* Arbitration, nor do they claim more broadly that litigant-claimants engaged in separate civil actions asserting distinct claims against a common defendant may intervene in each other's case simply to obtain access to discovery that may also be relevant, useful, or even admissible in their own respective actions. The Court sees no basis upon which to justify a different principle of intervention or result when the statutory proceeding in which intervention is sought is intended, and limited, to providing discovery for use in a particular foreign proceeding that does not involve the proposed intervenor. For that reason, it would appear as a general proposition that a proposed intervenor's ability to intervene in a § 1782 proceeding should be measured by its ability to intervene or be joined in the proceeding for which the discovery is sought.

legal operation of the district court's judgment on [the] complaint.") Moreover, their "interest in discovery" will not be impaired or impeded absent intervention by "the direct operation of the district court's judgment on the complaint." Whatever discovery is or is not obtained by Bolivia in this proceeding will not limit, enhance or, otherwise affect Movants' ability to obtain discovery for use in their own arbitration—through their own, already filed § 1782 actions or the UNCITRAL Rules[8]—or affect the admissibility of evidence in the *CMO* Arbitration.[9] For these reasons, Movants have not demonstrated a "significantly protectable interest" by showing that they "stand to gain or lose by the direct legal operation of the district court's judgment on [the] complaint." *Teague*, 931 F.2d at 261.

By way of summary, Movants have not demonstrated that their "interest in discovery" constitutes an "interest relating to the property or transaction" that is the subject of this action—the re-nationalization of the Colquiri Assets—or that they have a "claim or defense that shares with the main action a common question of fact or law."

Accordingly, it is hereby

ORDERED that Movants' Motion to Intervene and Participate in Discovery [Doc. No. 11] be, and the same hereby is, DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
February 23, 2018

---

[8] See UNCITRAL Rules, Article 27, Section 3 ("At any time, during the arbitral proceedings, the arbitral tribunal may require the parties to produce documents, exhibits or other evidence within such period of time as the arbitral tribunal shall determine.")
[9] See UNCITRAL Rules, Article 27, Section 4. ("the Arbitral tribunal shall determine the admissibility, relevance, materiality and weight of the evidence offered.")