1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                  ALEXANDRIA DIVISION

3  IN RE APPLICATION OF THE    )  Case 1:17-mc-00030
   PLURINATIONAL STATE OF      )
4  BOLIVIA FOR AN ORDER        )  Alexandria, Virginia
   DIRECTING DISCOVERY FROM    )
5  GONZALO SANCHEZ DE LOZADA Y )  February 13, 2018
   SANCHEZ DE BUSTAMANTE       )  10:58 a.m.
6  PURSUANT TO 28 U.S.C. 1782  )
   _____)  Pages 1 - 23
7

8  TRANSCRIPT OF MOTION FOR LEAVE TO INTERVENE IN PETITION

9       FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING

10         BEFORE THE HONORABLE ANTHONY J. TRENGA

11            UNITED STATES DISTRICT COURT JUDGE

12
   APPEARANCES:
13
   FOR THE PETITIONER:
14
        DAWN Y. YAMANE HEWETT, ESQUIRE
15      JOY ODOM, ESQUIRE
        QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
16      1300 I Street, N.W., Suite 900
        Washington, D.C.  20005
17      (202) 538-8000

18 FOR THE RESPONDENT:

19      RANI A. HABASH, ESQUIRE
        ALEXANDRE DE GRAMONT, ESQUIRE, *PRO HAC VICE*
20      DECHERT, LLP
        1900 K Street, N.W.
21      Washington, D.C.  20006-1110
        (202) 261-3300
22

23

24

25      COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1          THE CLERK:  Civil Action 17-mc-30, *The*

2 *Plurinational State of Bolivia v. Gonzalo Sanchez de*

3 *Lozada.*

4          Counsel, please note your appearances for the

5 record.

6          MS. HEWETT:  Good morning.  I'm Dawn Yamane

7 Hewett from Quinn Emanuel representing Mr. Orlandini

8 and CMO, the movants.

9          MS. ODOM:  Joy Odom, also on behalf of the

10 movants.

11          MR. HABASH:  Rani Habash from Dechert on

12 behalf of Bolivia.  I have with me my colleague who has

13 been admitted *pro hac vice*.

14          MR. DE GRAMONT:  Good morning, Your Honor.

15 Alex de Gramont on behalf of Bolivia.

16          THE COURT:  Welcome to everyone.

17          We're here on the motion to intervene by

18 Julio Miguel Orlandini-Agreda and Compania Minera

19 Orlandini.  I think I pronounced those recognizably.

20 I've reviewed the filings.  I would be pleased to hear

21 further from counsel on this.

22          MS. HEWETT:  Yes, Your Honor.  Good morning.

23          THE COURT:  I have to say, I really see both

24 sides of this in the sense that I understand why you

25 want to be involved.  I understand why Bolivia would

1  not like to open this up to a general assembly of

2  people who might have an interest in it.

3          Explain to me how you really think you're

4  prejudiced by not being able to intervene in this case

5  given that you have pending your own 1782 proceeding in

6  which presumably you could obtain from the former

7  president anything he produces in this proceeding,

8  including within your subpoena any relevant documents

9  that he may have produced in this proceeding, and also

10 why you couldn't get relief within the arbitration

11 proceeding itself with respect to any unfair use of any

12 materials that might be obtained in this 1782

13 proceeding.

14          MS. HEWETT:  Your Honor, in response to your

15 question, so how Mr. Orlandini and CMO are prejudiced

16 is precisely because we have these other discovery

17 applications seeking similar information but not the

18 same information but related to the same transaction,

19 the sale of Comsur, which is Mr. Sanchez de Lozada's

20 company, Comsur to Glencore.  That's the subject matter

21 of both of the petitions.  Bolivia has intervened, and

22 we consented to --

23          THE COURT:  But your complaint, as I

24 understand it, is that before it was nationalized, it

25 was basically trespassed upon and mined in violation of

1  your client's concession agreements.  Correct?

2         MS. HEWETT:  That is right.  There was

3  illegal trespass and theft of our minerals, and then

4  later a full sale expropriation of the assets.

5         THE COURT:  Then it was reprivatized and sold

6  to Glencore?

7         MS. HEWETT:  It was -- well, our

8  concessions -- actually, the concessions at issue in

9  Mr. Orlandini's and CMO's arbitration were never --

10  Mr. Orlandini and CMO have held those assets for

11  decades, those concessions.  So it's a little different

12  than the nationalization issue.

13         THE COURT:  Let's assume rather than a 1782

14  proceeding, which is basically an aid of discovery

15  statute to a pending arbitration, let's assume that

16  Glencore simply filed a lawsuit here against Bolivia

17  and you wanted to intervene for exactly the same

18  reasons.  Do you think you would be entitled to

19  intervene in that lawsuit simply for the purposes of

20  obtaining the benefits of discovery in that case?

21         MS. HEWETT:  I think what's different about

22  that -- and I would like to answer fully your original

23  question as well.

24         THE COURT:  Yes.

25         MS. HEWETT:  I think what's different, we're

1  not trying to intervene in Glencore's arbitration

2  against Bolivia.  We're trying to --

3          THE COURT:  I understand that.

4          MS. HEWETT:  We're simply trying to intervene

5  in this action.  The subject matter of this action is

6  simply to obtain documents from Mr. Sanchez de Lozada

7  about his involvement in the sale of Comsur to

8  Glencore.  This particular action, this discovery

9  matter is narrow in that the only thing that it's

10 seeking is the request -- the discovery request in

11 Bolivia's petition.

12         THE COURT:  Are you asking to intervene

13 solely for the purposes of receiving copies of what

14 otherwise is going to be produced, or do you want to

15 have the ability to start issuing your own subpoenas

16 and participating in depositions and ask your own

17 questions?

18         MS. HEWETT:  We've conferred with Bolivia's

19 counsel on this, on the question of our intervention,

20 before submitting our motion.  We submitted to them

21 that our sole purpose in intervening is to obtain

22 copies of the same documents, so same access to the

23 documents, as well as to be able to participate in a

24 deposition.

25         One of the reasons why we'd like to -- the

1 reason really principally why we'd like to participate

2 in the deposition is because we have -- Judge Davis on

3 Friday ordered the deposition of Mr. Sanchez de Lozada

4 in our discovery application. Bolivia will be party --

5 has intervened in that action. So Bolivia will be

6 participating in the deposition of Mr. Sanchez de

7 Lozada.

8            If in this action there's a deposition of

9 Mr. Sanchez de Lozada ordered and CMO and Mr. Orlandini

10 are not able to participate, there could be

11 contradictory information that Mr. Sanchez de Lozada

12 discloses in that deposition about the same transaction

13 that we would not have access to and we wouldn't know

14 about.

15            In responding to your original question about

16 could we --

17            THE COURT: Couldn't you ask for the

18 deposition transcripts of the witness in any other

19 proceeding in your 1782?

20            MS. HEWETT: Well, we have -- our discovery

21 action is a little bit farther along. We've already

22 issued the subpoena. Judge Davis has asked us to

23 provide some timeframes for the document requests that

24 we've already issued, and the documents should be

25 forthcoming shortly, as soon as we give our revised

1   document requests to counsel for Mr. Sanchez de Lozada.

2   And then the deposition is also going to occur shortly.

3           As far as the arbitration is concerned,

4   discovery in international arbitrations is much more

5   circumscribed than in federal court.  So we -- while we

6   could ask for information, the information that

7   arbitration -- the information that one is able to

8   obtain in discovery in international arbitrations is

9   much more circumscribed.

10          And I should note that Bolivia has never said

11  that they would not use any of the information obtained

12  in this proceeding for ours.  Even if it had, this

13  Court, nor Mr. Orlandini and CMO are -- should be

14  obligated to rely on that.  *In re Hornbeam*, the Court

15  said exactly the same thing, that the proposed

16  intervenor didn't have to rely, nor did the Court have

17  to rely on the assertion of Hornbeam, who was seeking

18  the information, that it would not -- and in that case,

19  Hornbeam actually did assert that it would not use

20  information against the proposed intervenor.

21          THE COURT:  Other than the documents and

22  deposition of Sanchez de Lozada, are there contemplated

23  other subpoenas that are being issued to other persons

24  or entities in your 1782?

25          MS. HEWETT:  At this time, so far there have

1  been -- there are two actions in New York.

2              THE COURT:  I'm talking about one in this

3  district.

4              MS. HEWETT:  In this district, we have only

5  issued the subpoena to Mr. Sanchez de Lozada, and at

6  this time, we've not filed any other --

7              THE COURT:  Are you contemplating any others?

8  Is there any other evidence in this district that

9  would --

10             MS. HEWETT:  Not to my knowledge, Your Honor.

11             THE COURT:  Is there any reason these two

12  1782s shouldn't be consolidated in some fashion?

13             MS. HEWETT:  Well, I think the timeframes are

14  quite -- the timeframes in terms of the proceeding of

15  the actions are quite different in that ours, we've

16  already had a discussion with Magistrate Judge Davis.

17  He's already ordered documents and a deposition in the

18  case.

19             THE COURT:  If they're so related, as you

20  say, why wouldn't it be in everyone's interest to

21  consolidate these and have one deposition of

22  Mr. Sanchez de Lozada and one production of documents

23  and everybody be on their way?

24             MS. HEWETT:  It's possible.  I mean, I will

25  say the documents that we requested in our discovery

1  request related more closely to just CMO and

2  Mr. Orlandini's concessions.

3          Bolivia's document request in this proceeding

4  relate more broadly to the sale of Comsur about due

5  diligence, bids, contracts between Mr. Sanchez de

6  Lozada and Glencore.

7          THE COURT:  That seems to me to argue against

8  what you're asking for, that Bolivia has -- recognizes

9  that Bolivia has an interest in maintaining a more

10  narrow focus in this particular 1782 of the pending

11  Glencore arbitration as opposed to a more broader scope

12  of inquiry that might apply to your future claims.

13          MS. HEWETT:  What I was actually trying to

14  say is the opposite, that the document requests here

15  are -- I mean, I could go through each of the document

16  request, and almost every single one of Bolivia's

17  documented request are --

18          THE COURT:  In this.

19          MS. HEWETT:  In this proceeding, yes, is very

20  likely to include information about Mr. Orlandini and

21  CMO that would be highly relevant to issues, for

22  example, of the valuation of the underlying assets and

23  the valuation of Comsur, which is what was sold to

24  Glencore.  All of the due diligence documents,

25  contracts between Mr. Sanchez de Lozada and Glencore

1   could divulge information, for example, of an agreement

2   not to divulge the illegal trespass of mining in the

3   formal due diligence documents.  It could involve

4   valuation of the mining assets of the minerals, the

5   actual minerals.

6           THE COURT:  Do you think that your discovery

7   in your own 1782 could result in the same deponent and

8   custodian of documents giving different responses to

9   essentially the same request for information?

10          MS. HEWETT:  Well, Mr. Sanchez de Lozada did

11  oppose our subpoena, and that was the procedural

12  posture we were in on Friday.

13          THE COURT:  On what grounds was it opposed?

14          MS. HEWETT:  It was opposed primarily on

15  burden, over-breadth, and relevance.  For the most

16  part, Judge Davis denied that petition and granted it

17  only to the extent for Mr. Orlandini and CMO to narrow

18  the document requests to include a timeframe and to,

19  you know, ensure that the document requests are related

20  to our arbitration.

21          THE COURT:  So Bolivia has intervened with

22  consent in that proceeding?

23          MS. HEWETT:  Yes.  We consented to Bolivia's

24  intervention.  We also consented to Bolivia's

25  intervention in two other petitions in the Southern

1  District of New York.  We've already concluded one

2  deposition in one of the proceedings, and the other

3  one, documents, we believe, are forthcoming.  So far we

4  are still working out the details of a protective

5  order.

6          THE COURT:  All right.  Although, in that

7  circumstance, though, Bolivia clearly is somebody that

8  will have this information.  Bolivia is the target

9  basically in these other proceedings.

10         MS. HEWETT:  Yes.  That is the procedural

11 posture of a number of these cases, but it also stands

12 that Mr. Orlandini and CMO are -- you know, you could

13 use the word "target."  There is an arbitration that is

14 filed.  Mr. Orlandini and CMO filed their arbitration

15 on February 5, last week.  So the arbitration is --

16 there can be no argument --

17         THE COURT:  Where is that pending?  In

18 London?

19         MS. HEWETT:  It's an international

20 arbitration under UNCITRAL rules.  The parties have not

21 chosen the seat of arbitration, but it's -- that's

22 something --

23         THE COURT:  It's under the U.S. bid; is that

24 right?  Your claim is under the bilateral treaty

25 agreement with the United States and Bolivia?

1           MS. HEWETT:  Yes, that's right.

2           So we have reason to believe that Bolivia

3  would not want to choose the United States as a seat in

4  terms of the location of the arbitration because the

5  party -- well, Mr. Orlandini is a U.S. citizen, and

6  then CMO is a U.S. company, for that reason.  So we

7  have proposed elsewhere in Europe so that -- as a

8  potentially mutually agreeable location for the

9  arbitration.

10          But I should note that in the discovery

11 proceedings in New York, Bolivian counsel referred to

12 those very discovery petitions as related -- the

13 subject matter of those petitions were related to the

14 subject matter of this petition.  So in petitioning

15 this Court for the discovery that it's seeking,

16 counsel, you know, basically conceded that the subject

17 matter of the two -- the different discovery petitions

18 were the same.

19          THE COURT:  All right.  Thank you.

20          Counsel.

21          MR. DE GRAMONT:  Thank you, Your Honor.  Alex

22 de Gramont on behalf of Bolivia.  Let me start by

23 saying that there are two larger problems for Bolivia,

24 putting aside the technical issues and the technical

25 questions of intervention.  The first is that Bolivia

1  is trying to defend itself in a $700 million

2  arbitration against Glencore. Glencore is the other

3  party. The Orlandini parties --

4              THE COURT: Filed by Glencore against

5  Bolivia.

6              MR. DE GRAMONT: Exactly.

7              THE COURT: Are their claims over against

8  Glencore?

9              MR. DE GRAMONT: No, not as of yet, Your

10 Honor.

11             So Bolivia needs to defend itself in this

12 very large arbitration. We have consented to the

13 intervention of Glencore.

14             THE COURT: When was that filed?

15             MR. DE GRAMONT: In 2016, Your Honor.

16             So on the one hand, we have limited time,

17 limited resources. We will have a seven-hour

18 deposition of Mr. Sanchez de Lozada if the Court

19 doesn't grant his motion to quash. We're already going

20 to have to share that time with Glencore.

21             In the bigger picture --

22             THE COURT: So there will be a seven-hour

23 limit on that deposition; is that correct?

24             MR. DE GRAMONT: That's what we expect, Your

25 Honor.

1           THE COURT:   Is that under the applicable

2   rules?

3           MR. DE GRAMONT:   It's under Rule 30, Your

4   Honor.   We anticipate that we'll have to comply with

5   the Federal Rules of Civil Procedure absent an

6   agreement between the parties or relief from the Court.

7           Now, there is -- also, the bigger policy

8   issue for a sovereign state is that sovereign states

9   will often engage in conduct, will take actions that

10  will affect multiple persons, multiple parties.   It

11  cannot be the case that when the sovereign state brings

12  a 1782 action to defend itself in one of those claims,

13  all of the other claimants can intervene to seek

14  discovery simply on the basis that there's some factual

15  overlap.

16          You know, there is a small but growing body

17  of 1782 cases that we in the international litigation

18  and arbitration community pay close attention to.   No

19  court, to our knowledge, has ever allowed a person to

20  intervene in a 1782 action where they have no role in

21  the underlying case, the case at issue, the foreign

22  proceeding at issue, but simply want to gather

23  discovery for some other action.

24          The truth is, Your Honor, these cases are

25  very different.   They are brought under different legal

1   instruments.  They involve different timeframes.  The

2   assets at issue in the Glencore case are located in a

3   different part of the country.

4           THE COURT:  Is there any reason why the

5   Orlandini people couldn't, in their own 1782, request

6   production of whatever is or will be produced in this

7   proceeding?  I mean subject to relevancy.

8           MR. DE GRAMONT:  Well, subject to relevancy,

9   there is no reason they couldn't ask that.  Now, as

10  Ms. Hewett said, last week Magistrate Judge Davis

11  ordered that the request be circumscribed to the

12  particular claims in that case.  It is entirely

13  possible that when we go and argue Mr. Sanchez de

14  Lozada's motion to quash before Judge Nachmanoff in a

15  couple of weeks, we will have a similar restriction

16  imposed.

17          So it seems to me that it is likely that the

18  document requests in the respective cases are going to

19  be focused on the different claims.  Again, in the

20  Glencore case, there are three assets located in one

21  part of the country that were allegedly expropriated

22  between the years, I believe, 2007 and 2012.  In the

23  Orlandini case, there is something like over 40

24  concessions located in a completely different part of

25  the country that Bolivia allegedly expropriated or took

1   adverse action against between 1997 and 2007.

2          So while there is some factual overlap in

3   that the sale from Mr. Sanchez de Lozada to Glencore

4   included some of the assets that are at issue in

5   Orlandini, these really are two different --

6          THE COURT:  They included the assets because

7   they had been nationalized before being deprivatized;

8   is that right?

9          MR. DE GRAMONT:  Are you referring to the

10  Glencore assets?

11         THE COURT:  Yes.

12         MR. DE GRAMONT:  Yeah.

13         THE COURT:  That's why there was an overlap.

14         MR. DE GRAMONT:  Yeah -- no.  So Mr. Sanchez

15  de Lozada was president in the late 1990s.  He paved

16  the road for privatization when he left office after

17  the first time.  He participated in the privatization

18  process and acquired two of the assets that were being

19  privatized by Bolivia.  He acquired the third asset

20  from another party that had acquired it during the

21  privatization, and then later he sold those assets

22  along with others to Glencore for a reported

23  $220 million.

24         So that is the subject matter of the Glencore

25  case.  Again, it's really very different from the

1    fundamental subject matter in the Orlandini case.

2          If the Court is interested, I would be happy

3    to go through the three different arguments.  We don't

4    think that *Orlandini* has standing.  We don't think they

5    meet the requirements of intervention as of right and

6    they don't meet the prerequisites for permissive

7    intervention.

8          With the Court's indulgence, I'm happy to go

9    through each of those.

10         THE COURT:  I've read your briefs on that.

11   If you have something to add to what you already told

12   the Court, I'm happy to hear it.

13         MR. DE GRAMONT:  Only with respect to your

14   first question on prejudice.  Orlandini will not be

15   prejudiced.  They can get everything they need in their

16   1782 action, and they can ask for any information that

17   we obtain in our 1782 against Sanchez de Lozada through

18   discovery in their UNCITRAL case.  They can obtain any

19   discovery through the UNCITRAL case that we have

20   obtained from Mr. Sanchez de Lozada in this action.

21         I suspect and I hope that we're going to

22   obtain lots of information from Mr. Sanchez de Lozada

23   that doesn't have anything to do with the Orlandini

24   case.  Again, we are unware of any court that has ever

25   allowed a party to intervene in a 1782 action when they

1  have no involvement in the case that is the subject

2  matter of the 1782 action.

3           THE COURT:  All right.  Thank you.

4           MR. DE GRAMONT:  Thank you, Your Honor.

5           THE COURT:  Counsel, I'll give you the last

6  word.

7           MS. HEWETT:  Yes.  I think in this matter,

8  Bolivia is trying to point out the differences in our

9  cases, but Bolivia's counsel himself has said that the

10  subject matter of the two -- of the discovery petitions

11  that we filed and the discovery petition that Bolivia

12  filed, which is the main action in our case is the two

13  different arbitrations, are related.

14           With regard to the argument that the

15  floodgates would be opened, Your Honor and the courts

16  of this country still have to abide by the limits of

17  Rule 24 in standing.  We believe that Mr. Orlandini and

18  that CMO meet the requirements for all three grounds.

19  It only has to meet the requirements for any one of the

20  grounds, but we firmly believe that Mr. Orlandini and

21  CMO meet all three.

22           It's important to note that Bolivia has never

23  disclaimed that the document requests are likely to

24  include information that's relevant to CMO.  They've

25  also never disclaimed that they could use the

1  information in this proceeding in the arbitration

2  against CMO and Mr. Orlandini.

3        There's another argument against their

4  assertion that this would open the floodgates is that

5  it takes significant resources to bring on an

6  international arbitration of the sizes of these

7  arbitrations.

8        Glencore's request is asking for $700 million

9  in damages.  Mr. Orlandini and CMO in their arbitration

10  are asking for hundreds of millions of dollars, if not

11  more.  Part of the information that we're seeking from

12  Mr. Sanchez de Lozada is with regard to the valuation

13  of the assets, and it's important to note that in the

14  sale of Comsur, the sale of the assets that are at

15  issue in the Glencore proceeding and the sale of the

16  assets and the concession rights that are at issue in

17  Mr. Orlandini and CMO's proceeding is the same.  It's

18  the sale of Comsur.

19        We're not trying to intervene in Glencore's

20  arbitration against Bolivia.  We're trying to intervene

21  in this discovery proceeding in which Bolivia is trying

22  to seek information about the sale of Comsur because we

23  believe that that information -- Bolivia is interested

24  in the same information.  But Bolivia has also not

25  disclaimed that Bolivia nor Sanchez de Lozada can

1  represent our interest, which is another factor in

2  determining whether or not we should be allowed to

3  intervene.

4       Bolivia has also never disclaimed that there

5  would be no -- that our motion was timely.  Again, that

6  nobody is -- Bolivia has never disclaimed that no one

7  is currently in this proceeding that could adequately

8  represent our interest.

9       The only interest of Bolivia's that would be

10  impaired by our intervening would be their ability to

11  gain an upper hand in our arbitration by obtaining

12  documents and testimony that's relevant to our

13  arbitration, to Mr. Orlandini and CMO's arbitration

14  that we wouldn't have access to.  They would have

15  access to a deposition where they will be able to ask

16  questions about the sale of Comsur to Glencore.  Even

17  if those questions are in that particular discovery

18  proceeding with regards to the assets at question,

19  they're going to be asking questions about the sale of

20  Comsur to Glencore generally and the circumstances of

21  that sale.  The circumstances of that sale are a part

22  of what we are interested in in our discovery matter

23  and in our arbitration as well.

24       Bolivia has also never stated that it

25  wouldn't use the information.  It's also never said

1   that it wouldn't object if CMO tries to request the

2   information in the UNCITRAL arbiter proceeding.  Even

3   if it did, again, like I said earlier, there's no

4   reason why Mr. Orlandini or CMO or this Court should

5   have to take those assertions at face value.  It would

6   be difficult, if not impossible, to enforce such an

7   assertion in any event.

8           The underlying arbitrations here share a

9   common question of fact, which is why our discovery

10  petitions are indeed related and why we seek to

11  intervene in this case.  And because of this

12  commonality between our cases and the common questions

13  of fact, it's precisely that that gives rise to the

14  grounds for our standing to intervene, as well as why

15  we qualify for intervention as of right.

16          I also want to note that the producing party

17  in this case, Mr. Sanchez de Lozada, has not submitted

18  any filing opposing Mr. Orlandini or CMO's requests,

19  and we understand from their motion to quash that their

20  motion to quash is not directed in particular to

21  Mr. Orlandini and/or CMO's access to those documents

22  that would be produced but are rather more objections

23  based on the relevance of the 1782 factors, the intel

24  factors.

25          I have also spoken with counsel for Glencore.

1   Glencore is also not filing anything with regard to our

2   motion to intervene in the particular proceeding.

3           THE COURT:  Are you aware of any court

4   decisions that have allowed intervention in comparable

5   situations?

6           MS. HEWETT:  We cited Your Honor the In re

7   Letter of Request From Crown Prosecution Service, as

8   well as the In re Request for --

9           THE COURT:  Those aren't quite the same; are

10  they?

11          MS. HEWETT:  They're a little bit different,

12  but again, as Bolivia's counsel noted, 1782, although

13  it's growing, is a small body of law at this point.

14  Simply because there isn't a case that is exactly the

15  same fact pattern, we think that these cases actually

16  are similar in that the information that's obtained in

17  the 1782 could be used against the proposed intervenor

18  or the -- the person who is -- in those actions, they

19  were trying to quash the subpoenas.

20          In this particular proceeding, again, we are

21  not seeking to intervene to cause any delay or

22  prejudice to Bolivia in terms of trying to quash the

23  subpoena and narrow the subpoena in any way.  Simply,

24  what we'd like to do is be able to have the same access

25  to the documents and be able to participate in the

1  deposition.  We've stated to Bolivia's counsel that

2  that is our purpose in intervening in this case.

3          THE COURT:  All right.  Thank you.

4          MS. HEWETT:  Thank you very much.

5          MR. DE GRAMONT:  Your Honor, if I may,

6  there's just one misstatement of law.

7          THE COURT:  Go ahead.  I'll give you that

8  opportunity, and I'll let counsel respond if she wants

9  to.

10          MR. DE GRAMONT:  Ms. Hewett, if I understood

11  her correctly, said that any of the three bases would

12  be sufficient, but as I understand it, you have to have

13  standing in order to intervene as of right.

14          THE COURT:  Right, I understand.

15          MR. DE GRAMONT:  Thank you, Your Honor.

16          THE COURT:  I'll take it under advisement.  I

17  hope I can get a decision to you very quickly.

18          MR. DE GRAMONT:  Thank you, Your Honor.

19          MS. HEWETT:  Thank you, Your Honor.

20          THE COURT:  All right.  Thank you.

21          The Court will stand in recess.

22          ------------------------------------
                     Time:  11:27 a.m.
23
        I certify that the foregoing is a true and
24   accurate transcription of my stenographic notes.
                                        /s/
25                          Rhonda F. Montgomery, CCR, RPR